UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN P. TAYLOR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | CAUSE NO. 3:12-CV-228 |

**OPINION AND ORDER**

Plaintiff Kevin Taylor appeals the Social Security Administration's decision to deny his application for disability insurance benefits. An administrative law judge denied Taylor's request for benefits and found that Taylor was not disabled within the meaning of the Social Security Act. Taylor raises a number of challenges to the ALJ's determination, but for the reasons below, I conclude that the ALJ's decision was supported by substantial evidence. Therefore, I affirm the decision of the ALJ.

**BACKGROUND**

Those looking for a detailed discussion of Taylor's medical records are directed to the extensive summaries in the ALJ's decision [R. 12-20] and in Taylor's opening brief [DE 10 at 2-18]. Rather than simply reiterating those summaries, I will give a brief overview of Taylor's history of health issues.

Taylor applied for disability benefits on August 24, 2009, alleging an onset date of June 1, 2008. The claims were denied initially on December 21, 2009, and then again upon reconsideration on February 8, 2010. Subsequently, Taylor filed a written request for a hearing,

which was held on December 6, 2010. Taylor testified at the hearing, as did his wife, Michelle Taylor, and a vocational expert. At the hearing, Taylor's counsel outlined his medical problems as follows:

> The most severe [impairments] are his, his back and the pain from which he suffers; the breathing issues are the most significant conditions. Depression is also an issue . . . the back problems are the most severe. . . [t]he breathing's secondary, the depression, quite frankly, probably secondary to the first two, in that if Mr. Taylor was well and able to work, he probably wouldn't be suffering from the depression he is.

[R. 44-45]. In addition to the chief concerns outlined by Taylor's counsel, the ALJ went on to find that Taylor's "degenerative disc disease, asthma, non-insulin-dependent diabetes mellitus, hypertension, anthralgia of the knees, major depression, and morbid obesity" were all "severe" impairments [R. 12]. He also considered Taylor's non-severe impairments, including his recent foot surgery and neuropathy in his arm [*Id.*], and Taylor's allegation of "anxiety," which the ALJ found was without a diagnosis in the record and therefore "non-medically determinable." [*Id.*].

Taylor's testimony at the hearing before the ALJ reflected his health difficulties. He testified to having trouble standing, sitting, walking (though he testified that his pain is worst when he is standing), and excessive drowsiness from pain medication. He testified that he watches his and his wife's children when his wife, Michelle, is at work, and that his mother watches the children from time to time. Taylor's wife, Michelle, testified that she generally has to have someone come to their home to watch the couple's children because Taylor cannot. A vocational expert also testified as to the various jobs available when the ALJ asked him about different hypotheticals.

2

The ALJ issued a decision denying benefits [R. 9-23]. At Step One, the ALJ found that Taylor met the insured status requirements of the Social Security Act, and that he has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date. At Step Two, the ALJ concluded that Taylor had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, asthma, non-insulin-dependent diabetes mellitus, hypertension, arthralgia of the knees, major depression, and morbid obesity. The ALJ found Taylor's post 4th metatarsal osteotomy, and left ulnar neuropathy to be non-severe impairments, and determined that Taylor's anxiety was a non-medically determinable impairment.

At Step Three, the ALJ concluded that Taylor does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. At Step Four, the ALJ found that Taylor could perform light work with the following qualifications: he is limited to occasionally climbing stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, and scaffolds; avoiding concentrated exposure to extreme cold, heat, wetness, humidity, unprotected heights, and ambulation on slick/uneven surfaces; avoiding even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and he is limited to unskilled work tasks that require no more than occasional interaction with the general public, no team oriented tasks, and no close proximity to others. At Step Five, the ALJ found that Taylor could not perform any past relevant work but that there was a sufficiently significant number of jobs in the national economy that he could perform.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Taylor timely sought review of that decision by filing this case.

# DISCUSSION

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.* The question before me is not whether or not Taylor is disabled, but whether there is substantial evidence in the record supporting the ALJ's decision of not disabled. *Books v. Chater*, 91 F.3d 972, 977 (7th Cir. 1996). In other words, the ALJ's decision, if supported by substantial evidence and reached under the correct legal standard, will be upheld even if reasonable minds could differ as to the appropriate conclusion. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). It is not my job to re-weigh evidence, choose among conflicting versions of events, decide questions of credibility, or substitute my own judgment for the ALJ's. *Young*, 362 F.3d at 1001.

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant is deemed to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

Taylor contends that the ALJ erred in four ways: (1) at Step Two, by failing to classify his COPD as a severe impairment; (2) at Step Four, by improperly basing his opinion on an unsigned RFC; (3) at Step Four, by improperly rejecting treating physician Dr. Borhan's opinion because it is an "issue reserved to the commissioner;" and (4) at Step Four, by improperly evaluating the severity of Taylor's personality disorder. I'll address his arguments in turn.

**1.     Chronic Obstructive Pulmonary Disease**

Taylor first contends that the ALJ erred by failing to conclude that Taylor's COPD was a severe condition. He argues that this was an error because 1) the ALJ didn't consider the effects of Taylor's shortness of breath and chest pain on his ability to work, and 2) because he mischaracterized the evidence in regard to the severity of Taylor's COPD [DE 10 at 18].

Taylor's first argument in this regard is a non-starter: because the ALJ determined that Taylor had numerous severe impairments, he went on to consider the totality of Taylor's severe and non-severe impairments in Steps Three through Five. In such a situation, a Step Two challenge is unwarranted. *See Henke v. Astrue*, 2012 WL 6644201, at *4 (7th Cir. Dec. 21, 2012) ("Because the ALJ proceeded beyond Step 2, and considered Henke's severe and non-severe impairments at Step 4, any purported error in the Step–2 severity determination was harmless."); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment. Here, the ALJ categorized two impairments as severe, and so any error of omission was harmless."); *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (failure to conclude that condition was severe at

Step Two rendered harmless where ALJ determined that other conditions were severe and proceeded with analysis).

Taylor's second contention, that the ALJ mischaracterized the evidence with regard to COPD, is similarly flawed. Taylor argues that the ALJ disregarded test results that show that he had severe COPD, misconstrued Taylor's statements to his doctors, and failed to give controlling weight to the opinion of the treating physician [DE 10 at 18-19].

First, the ALJ did not mischaracterize the evidence of Taylor's COPD. The ALJ concluded that Taylor did not meet the listing for COPD. [R. at 13], a conclusion that Taylor has not challenged [DE 10 at 19]. Instead, Taylor argues, when he is not using prescribed medication, his pulmonary function test resulted in an $FEV_1$ level of 1.48–2.21(which would meet the listing for COPD), and that this is evidence that he suffered from COPD that the ALJ ignored. However, Taylor fails to mention that when he used his prescribed inhaler, his $FEV_1$ level was between 1.98 and 2.27, which does not meet the listing. Conditions that are controlled with medication "do not entitle one to benefits or boost one's entitlement by aggravating another medical condtion." *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). The ALJ properly evaluated this evidence, and the results of his tests without medication are not alone sufficient to demonstrate that the ALJ did not properly consider his COPD.

Next, Taylor claims that the ALJ misconstrued his statements to his doctor in 2009 and takes issue with the ALJ's determination that when Taylor was exercising and losing weight, "he told his doctor in 2009 that he was no longer getting short of breath" [R. 19], because what the medical records actually show is that Taylor told his doctor that "he does not get as short of breath when he exerts himself" [R. 320]. But this type of nitpicking is insufficient to reverse the

6

ALJ's reasoned decision. *See Castile*, 617 F.3d at 929 ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it."). Moreover, this argument is particularly unavailing because there is substantial evidence to support the ALJ's reasoned determination that Taylor's COPD was not severe.

The ALJ fully considered the objective medical evidence pertaining to Taylor's "asthma, including complaints of shortness of breath and increased respiratory problems" [R. 19]. In reviewing the medical evidence, he determined that Taylor treated his shortness of breath with an inhaler; he had a noticeable improvement with his breathing in 2009 and 2010 when he began exercising and losing weight; and that Taylor had a heavy smoking habit and had no intention of quitting [R. 19]. He then crafted an RFC that only permitted Taylor to work in certain conditions that would not exacerbate his breathing difficulties [R. 16]. In other words, though the ALJ did not directly include COPD as a severe impairment, he reasonably considered all of Taylor's complaints regarding his respiratory troubles, and factored those impairments into his RFC by reasonably accommodating Taylor's respiratory impairments.

The ALJ also specifically found that Taylor's refusal to follow his doctor's orders to quit smoking and his lack of willingness to quit smoking to improve his health were indications that Taylor's medical conditions were not as severe as he claimed at the hearing [R. 19]. Additionally, the ALJ found Taylor's statements as to the limiting effects of his COPD not credible as they were inconsistent with his medical records and because he refused to quit smoking. [R. 19]. Credibility determinations by the ALJ will only be reversed if the claimant can show that it was patently wrong. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Taylor has not presented that the ALJ's opinion was patently wrong; therefore, his findings as to

Taylor's credibility concerning the effect of his breathing difficulties is sound. In conjunction with the objective medical evidence, therefore, the ALJ's findings as to Taylor's respiratory difficulties should not be remanded.

**2.      ALJ's reliance on 'unsigned' RFC**

The second issue Taylor raises is the ALJ's reliance on an 'unsigned' RFC [DE 10 at 19–20]. Taylor argues that because the opinions of non-examining state agency physicians M. Ruiz, M.D. and Montoya Fernando, M.D. were unsigned, the ALJ's reliance on them was in error. Taylor is correct that in order to deny benefits, an ALJ cannot rely on an unsigned, undated medical opinion. *Terry v. Astrue*, 580 F.3d 471, 475–76 (7th Cir. 2009); 20 C.F.R. § 404.1519o. However, Dr. Ruiz and Dr. Montoya both signed their medical forms electronically [R. 390-91], which is permissible. *See* Social Security Administration's Program Operations Manual System (POMS) DI 26510.089, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0426510089 (last accessed on September 23, 2013) (requiring that medical records be either physically signed, or contain an approved electronic signature).

Taylor argues that POMS lacks legal force, but district courts in this circuit have relied on cases where reports were signed using electronic signatures. *See Borth v. Comm'r of Soc. Sec.*, No. 08-cv-1352, 2010 WL 786007, at *6 (C.D. Ill. Mar. 4, 2010) (affirming the ALJ's opinion relying upon an electronically signed report in making his decision); *Guthrie v. Astrue*, No. 10-cv-03180, 2011 WL 3041365, at *22 (N.D. Ill. July 22, 2011) (noting that while electronic signatures were unacceptable prior to POMS amendment, electronic signatures were acceptable following June 8, 2009). Additionally, *Terry* is inapposite: that case presented a

8

wholly unsigned medical opinion, as opposed to an electronic signature. 580 F.3d at 474. Accordingly, the ALJ properly relied upon the opinions of Drs. Ruiz and Montoya, and remand is not warranted.

**3.     ALJ's rejection of Dr. Borhan's opinion**

Taylor's third argument in favor of remand is that the ALJ improperly rejected the opinion of the treating physician who managed Taylor's back pain, Dr. Borhan, that Taylor could not work due to his back pain [DE 10 at 20]. The ALJ rejected Dr. Borhan's opinion on two bases: first, that it was conclusory and unsupported by the medical evidence, and second, that whether or not the claimant was able to perform gainful employment was "an issue reserved to the Commissioner" [R. 20]. Taylor argues that this was in error because the ALJ did not give proper weight to his treating physician [DE 10 at 21]. However, because the ALJ's opinion outlined sufficient evidence to support rejecting Dr. Borhan's opinion, I find no error.

First of all, a treating physician's opinion receives controlling weight only if it is well supported by "medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d. 863, 870 (7th Cir. 2000). Moreover, "[a]n ALJ is not required to accept a doctor's opinion if it is brief, conclusory, and inadequately supported by clinical findings." *Gildon v. Astrue*, 260 Fed. App'x 927, 929 (7th Cir. 2008) (citations and quotations omitted).

In this case, the ALJ discounted Dr. Borhan's opinion because it was inconsistent with the record as a whole [R. 20], a conclusion that is supported by substantial evidence: the record reveals that Taylor's back pain was alleviated to some extent with steroid injections [R. 18], that Taylor and his wife reported to his doctors that his back and knee pain felt a "lot better"

following an exercise program and weight loss [*Id.*]; that Taylor and his wife gave conflicting information about how long he could sit or lie down [*Id.*]; that the consulting examiner noted that it would be difficult for someone with true radiculopathy to be have the flexibility, ambulation, and range of motion that Taylor had [*Id.*]; and that Taylor himself reported that he cared for his children and performed activities of daily living [R. 20].

Second, the ALJ is correct that "[w]hether [Taylor] was disabled during that time is an issue reserved to the Commissioner and she is not entitled to disability benefits simply because [his] physician states that [he] is disabled" and a claimant is not entitled to benefits just because a physician finds him "disabled" or "unable to work." *Gildon*, 260 Fed. App'x. at 929. In fact, opinions by a physician, treating or otherwise, that a claimant is "unable to work" are not considered medical opinions at all, and "are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d)(1-2). In other words, Dr. Borhan's statement that Taylor is unable to work is not to be considered a medical opinion at all. Accordingly, the ALJ's discounting of Dr. Borhan's opinion was appropriate.

At the very least, where an ALJ discounts a treating physician's opinion after considering the extent to which the opinion is supporting by medical findings and is consistent with substantial evidence in the record, the ALJ need only "minimally articulate" his reasons for doing so. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). In light of Dr. Borhan's conclusory opinion that Taylor is "unable to work," and the ALJ's review of the medical evidence, he has clearly met that standard and remand is unwarranted.

### 4. The ALJ properly assessed Taylor's personality disorder

Taylor's final argument is that the ALJ improperly evaluated the severity of Taylor's mental disorders, specifically his depression, uncontrollable frustration with people, and inability to handle stressful situations [DE 20 at 22]. He argues that the ALJ mischaracterized the evidence as to the severity and improvement of Taylor's mental condition following treatment [DE 10 at 22]. I disagree. In his opinion, the ALJ agreed that the Plaintiff had severe mental impairments [R. 20]. To that end, he "afforded little evidentiary weight" to the opinions of two non-examining state agency phsychologists, Dr. F. Kladder, Ph.D. and Dr. Donna Unversahw, Ph.D., both of which found that Taylor's mental impairments were "non-severe" [*Id.*]. The ALJ rejected these opinions, finding that "evidence indicates that the claimant requires ongoing medication and counseling" [*Id.*].

The ALJ specifically addressed Taylor's allegations of symptom severity and found that they were not entirely credible because they were not supported by the medical evidence [R. 19-20]. In September 2009, Taylor was prescribed Cymbalta for depression, which helped him, and there was further improvement in his condition once he began psychiatric treatment in March 2010 [R. 19]. According to his medical records, he was responsive to and continued to improve with treatment, reported that his medications helped him to calm down, and no longer reported suicidal ideation [*Id.*]. Taylor's treating social worker found that he was stable and did not indicate any significant findings or limitations [*Id.*]. This evidence shows that the ALJ fully considered the record in making his determination, and his credibility determination will thus not be disturbed.

Taylor counters that the ALJ's assessment of the record is incorrect, because the need for ongoing treatment was an indication that, contrary to the ALJ's opinion, there was not "a record reflective of the type of improvement suggested by the ALJ in his opinion" [DE 10 at 22-23] and that Taylor was "not a man who is doing well" [DE 12 at 4-5].  Taylor also argues that one of the doctors who treated him assigned him a "Global Assessment of Functioning," or "GAF" score of 45, which indicated a serious impairment in social, occupational functioning with an inability to keep a job [DE 10 at 22].  The Commissioner responds by pointing out that an examining psychologist assigned Taylor a GAF of 60, and Taylor has failed to establish why one score versus the other controls [DE 11 at 12].  Ultimately, though, "nowhere do the Social Security regulations or case law require an ALJ to determine an individual's disability based entirely on his GAF score."  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  Rather than rely on these competing GAF scores that are largely without context, the ALJ's ultimate finding that Taylor suffered from severe mental issues that needed to be controlled by ongoing medication and counseling is supported by the record of improvement with treatment.

Finally, the ALJ factored in Taylor's mental conditions in restricting his RFC to unskilled work and only minimal interaction with the public. [R. 16].  Specifically, the ALJ "limited [Taylor] to unskilled work tasks that require no more than occasional interaction with the general public, no team oriented tasks, and no close proximity to others." [*Id.*].  There is no evidence that these restrictions fail to reasonably accommodate Taylor's mental limitations.  *See Outlaw v. Astrue*, 412 Fed. App'x. 894, 897 (7th Cir. 2011) (finding that limiting the claimant's RFC to include only unskilled work, with no public contact, did provide reasonable accommodations for the claimant's mental limitations).  These restrictions are supported by

Taylor's medical records and treatment history. Accordingly, the ALJ's determination as to Taylor's mental impairments is appropriate, and his decision is affirmed.

## CONCLUSION

The ALJ provided legitimate reasons for his opinion. While reasonable minds could differ, the only issue is whether the conclusion reached by the ALJ was supported by substantial evidence, and it was. Accordingly, the decision of the ALJ is **AFFIRMED**.

**SO ORDERED**.

ENTERED: September 26, 2013.   s/ Philip P. Simon
                               PHILIP P. SIMON, CHIEF JUDGE
                               UNITED STATES DISTRICT COURT